UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDS,<br><br>                Plaintiff,<br><br>      v.<br><br>MIDLAND NATIONAL LIFE INSURANCE COMPANY,<br><br>                Defendant. | Case No. 23-cv-04680-DMR<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE JURY DEMAND**<br><br>Re: Dkt. Nos. 76, 77 |

This is an interpleader action that involves competing claims to two life insurance policies issued by Midland National Life Insurance Company ("Midland") to Decedent Eric Baxley. Plaintiff and Counterclaim Defendant Debbie Sands now moves for summary judgment on the interpleader action and to strike Norman's jury demand. [Docket Nos. 76, 77.] Third-Party Defendant Daniel Norman opposes the motion for summary judgment but did not respond to the motion to strike. [Docket No. 79.] The court held a hearing on September 12, 2024 at which it granted the motion to strike the jury demand as unopposed. [Docket No. 83 (Minute Order).] For the following reasons, the motion for summary judgment is granted.

**I.  BACKGROUND**

Baxley purchased two life insurance policies from Midland in 2016. Policy No. 1505078187 ("Policy 8187") has a $100,000 death benefit, and Policy No. 150506222 ("Policy 6222") has a $500,000 death benefit. [Docket Nos. 76-3 (Sands Decl. Aug. 8, 2024) ¶¶ 22, 23, Exs. 1 (Policy 8187), 2 (Policy 6222); 76-1 (Robinson Decl. Aug. 8, 2024) ¶ 4.] Baxley named his mother, Deborah Guidry; father, Terence Baxley; and then-fiancé, Lynne Raguindin, as primary beneficiaries on the policies. Policy 8187 at ECF p. 60; Policy 6222 at ECF p. 17. Baxley later made beneficiary changes. *See, e.g.*, Sands Decl. ¶ 34, Ex. 16 (Nov. 29, 2016

1 beneficiary change request for Policy 8187).

2       According to Marc Robinson, Midland's Operations Director—Securities Service, the last recorded beneficiary designation on file with Midland for Policy 8187 is dated February 8, 2022. It identifies Sands as Baxley's "Domestic Partner" and designates her as the 100% primary beneficiary. It designates Norman, Baxley's cousin, as the 100% contingent beneficiary. Robinson Decl. ¶¶ 3, 5; Sands Decl. ¶ 24, Ex. 3 (Feb. 8, 2022 Policy 8187 Beneficiary Change Request). The last recorded beneficiary designation on file for Policy 6222 is dated February 15, 2022. It identifies Sands as Baxley's "Fiancee" and designates her as the 100% primary beneficiary. It also designates Norman as the 100% contingent beneficiary. Robinson Decl. ¶ 6; Sands Decl. ¶ 26, Ex. 5 (Feb. 15, 2022 Policy 6222 Beneficiary Change Request). Both beneficiary change requests were submitted to Midland online via DocuSign, which requires a password. Following the submissions of the beneficiary change requests, Midland mailed letters to Baxley with endorsements confirming the changes. Robinson Decl. ¶¶ 5-7; Sands Decl. ¶¶ 25, 27, Exs. 4 (Policy 8187 Endorsement), 6 (Policy 6222 Endorsement).

      Baxley died in March 2022. He was 45 years old. Compl. ¶ 7. Sands states that she was engaged to Baxley when he died. Sands Decl. ¶ 3. She filed a complaint against Midland in the United States District Court for the Southern District of Iowa in August 2022, alleging that she submitted a claim for the life insurance benefits due under the policies and that Midland failed to make payment. *See* Compl. ¶¶ 6, 9, 10. The complaint alleges claims for breach of contract and declaratory judgment. In September 2022, Midland answered the complaint and filed a Counterclaim of Interpleader against Sands and a Third-Party Complaint of Interpleader against Norman pursuant to Federal Rule of Civil Procedure 22. [Docket No. 9 (Answer/Counterclaim.] Midland alleged that it had received a letter from Norman "indicating that he disputes the recent beneficiary changes to the Policies," *id*. at ¶ 21, and asked the court to enter judgment establishing the parties' legal rights to the death benefits due under the policies. *Id*. at 12.

      In January 2023, the court granted Midland leave to deposit the life insurance benefits plus interest with the court and dismissed Midland from the action with prejudice. [Docket No. 30.] In September 2023, the court transferred the matter to this court pursuant to 28 U.S.C. § 1404(a).

1    Sands now moves for summary judgment on the interpleader claim filed by Midland. She
2 seeks an award of the life insurance benefits and applicable interest on deposit with the court.
3 Norman opposes.

4 **II.    LEGAL STANDARD**

5    A court shall grant summary judgment "if . . . there is no genuine dispute as to any material
6 fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden
7 of establishing the absence of a genuine issue of material fact lies with the moving party.
8 *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477
9 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-
10 moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.
11 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue
12 exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could
13 return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200
14 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The
15 court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.
16 *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*,
17 477 U.S. at 255).

18    To defeat summary judgment once the moving party has met its burden, the nonmoving
19 party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as
20 otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of
21 material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist
22 to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477
23 U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue"
24 will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting
25 *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the
26 record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there
27 is no genuine issue for trial." *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at
28 587).

### III. DISCUSSION

Midland brought this interpleader action under Federal Rule of Civil Procedure 22(a), which "allows a party to join all other claimants as adverse parties when their claims are such that the stakeholder may be exposed to multiple liability." *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982). "The purpose of interpleader is for the stakeholder to protect itself against the problems posed by multiple claimants to a single fund." *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010) (citation and quotation marks omitted). "Rule 22 is not itself a source of federal jurisdiction; in a Rule 22 interpleader action, subject matter jurisdiction is determined in the same manner as in other civil actions." *Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1163 (C.D. Cal. 2010), *aff'd,* 491 F. App'x 793 (9th Cir. 2012). "For interpleader under rule 22(1) predicated on diversity jurisdiction, there must be diversity between the stakeholder on one hand and the claimants on the other." *Gelfgren*, 680 F.2d at 81 n.1. Here, jurisdiction is proper under 28 U.S.C. § 1332 because Midland is diverse from Sands and Norman and the amount in controversy exceeds $75,000. *See* Answer/Counterclaim 6, ¶ 5.

Since subject matter jurisdiction is based on diversity jurisdiction, California law governs the parties' dispute. *See Lincoln Nat'l Life Ins. Co. v. Graham*, No. 2:12-CV-2177-SVW-RZ, 2013 WL 12132047, at *3 n.10 (C.D. Cal. Jan. 3, 2013) ("[f]ederal courts sitting in a diversity interpleader action apply the substantive law of the forum state, just as they would in other diversity actions." (citation omitted)); 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1713 (Mary Kay Kane 3d ed.) "The doctrine of Erie Railroad Company v. Tompkins . . . is fully applicable in interpleader actions. Thus, state law governs in Federal Rule of Civil Procedure 22 . . . interpleader cases since the basis of the court's jurisdiction is diversity of citizenship"). When determining the beneficiary of a life insurance policy under California law, courts in the Ninth Circuit have held that "the intent of the insured as expressed by the [beneficiary designation] should be given effect so far as possible" and use a two-step inquiry. *Metro. Life Ins. Co. v. Galicia*, No. 5:19-CV-01412-JWH-KKx, 2021 WL 5083439, at *4 (C.D. Cal. Nov. 1, 2021) (quoting *Beck v. W. Coast Life Ins. Co.*, 38 Cal. 2d 643, 646-47 (1952));

4

*Primerica Life Ins. Co. v. Spaid*, No. 2:16-CV-1201-RGK-AFM, 2016 WL 9223793, at *2 (C.D. Cal. Oct. 18, 2016). First, the claimant asserting that they are the designated beneficiary must come forward with evidence proving that they are the designee. *See Metro. Life Ins.*, 2021 WL 5083439, at *4. Then, if a second claimant challenges the beneficiary designation on the ground of undue influence, fraud, or incapacity, the burden shifts to the second claimant to prove those claims. *Id.* (citations omitted); *Primerica*, 2016 WL 9223793, at *2. *See Baekgaard v. Carreiro*, 237 F.2d 459, 463 (9th Cir. 1956) (in interpleader action, ex-spouse who previously waived her expectancies under life insurance policies as part of divorce settlement bore the burden to prove the insured's intent was that she should receive the insurance proceeds).

Sands's opening brief cites *Metro. Life Ins.* and *Primerica* and applies the two-step, burden-shifting framework from those cases. *See* Mot. 6-9. Norman's opposition fails to address this authority or apply the two-step framework. Instead, he asserts, without legal support, that "Sands bears the burden of proof on the Beneficiary Designation change upon which she seeks to receive the benefits."[1] *See* Opp'n 16. At the hearing, Norman maintained that the framework for the parties' dispute is "disputed legal facts." He did not cite any authority supporting application of a different standard than the two-step framework from *Metro. Life Ins.* and *Primerica*. Accordingly, Norman has conceded that the framework applies to this dispute, including that he bears the burden of proof with respect to any claim of undue influence, fraud, or incapacity.

At the first step, Sands has presented evidence that she is the sole primary beneficiary of Policies 8187 and 6222. Her evidence shows that the last recorded beneficiary designations on file for both policies name Sands as the 100% primary beneficiary. Robinson Decl. ¶¶ 5, 6. Accordingly, she has satisfied her burden of demonstrating that she is entitled to receive the proceeds of the life insurance policies. *See Metro. Life Ins.*, 2021 WL 5083439, at *4 ("Ms. Lecea proved her claim to the Plan Benefits by showing that the Policy designates her as the sole beneficiary of the Plan Benefits.").

---

[1] In fact, the only law Norman cites in his opposition are cases addressing the summary judgment standard. Opp'n 15-16.

At the second step, Norman bears the burden of proof in challenging the February 2022 beneficiary designations. He argues that the February 2022 beneficiary designations were not completed by Baxley and are "not genuine, believable or credible."[2] *See* Opp'n 2. Norman attacks Sands's credibility[3] and contends that Baxley was a victim of identity theft, although he does not directly accuse Sands of identity theft or of making the beneficiary changes herself. *See id*. at 3, 8, 10, 12. He does not otherwise clarify the basis for his challenge to the beneficiary designations with respect to applicable California law.

Sands propounded interrogatories seeking the basis for Norman's challenge to the February 2022 beneficiary designations. Interrogatory No. 10 asked, "[w]hat specific actions did Debbie Sands take that constitute fraudulent acts with respect to Eric Baxley's life insurance policies?" Norman responded, "[t]he allegation is not of fraud, and fraud does not have to be proven by Dan Norman," and that the "documents submitted to Midland in January and February 2022 purporting to be from Eric Baxley are not actually prepared by, or from Eric Baxley." Sands Decl. ¶ 28, Ex. 7 (Interrogatory Responses) at ECF p. 9. In response to an interrogatory asking,

---

[2] Norman does not dispute that Baxley had the right to change the beneficiaries on his life insurance policies. *See Cook v. Cook*, 17 Cal. 2d 639, 644 (1941) ("[i]t is a fundamental rule of law, as conceded by both parties, that in an ordinary life insurance policy where the insured reserves the right to change the beneficiary named therein, such change may be made by him at any time prior to his death"). Nor does he contend that the February 2022 beneficiary designations naming Sands as the 100% primary beneficiary on both policies did not conform with the terms of the policies. *See Life Ins. Co. of N. Am. v. Ortiz*, 535 F.3d 990, 994 (9th Cir. 2008) ("[a]s a general rule, California requires a change to a beneficiary designation to be made in accordance with the terms of the policy.").

[3] Norman devotes a significant portion of the opposition to attacking Sands's credibility, including referring extensively to Sands's criminal history. *See* Opp'n 3, 5, 14-15, 16. He also submits evidence regarding her criminal history, including discovery responses by Sands. [Docket No. 79-3 (Fogel Decl. Aug. 21, 2024) ¶¶ 3, 17, 21, 22, Exs. M (Sands's Interrogatory Responses), Q.] With respect to an interrogatory asking if Sands has ever been convicted of a felony, Sands provided "[a] list of all criminal cases known to involve Sands," all of which are from 2000 and earlier, and objected to the admissibility of the information pursuant to Federal Rule of Evidence 609(b). Ex. M at ECF pp. 1-2. Sands renews this objection in her reply. *See* Reply 13.
Evidence of a conviction that is more than 10 years old "is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). Norman does not address this rule or explain how the probative value of Sands's prior convictions "substantially outweighs [their] prejudicial effect." Accordingly, the objection is sustained, and the court will not consider this evidence in ruling on the motion.

6

1  "[w]hat specific evidence supports your claim that Debbie Sands committed fraud with respect to
2  Eric Baxley's life insurance policies," Norman responded, "[t]he allegation is not fraud; this is an
3  interpleader complaint." *Id*. at ECF p. 10 (Interrogatory No. 11).  Finally, in response to a request
4  for production ("RFP") asking for "any documents that support your claim that Debbie Sands
5  committed fraud with respect to Eric Baxley's life insurance policies," Norman responded:

> Objection.  This request for production is outside of the pleadings in this case.  Debbie Sands has the burden of proof on the any [sic] beneficiary designation which shows a change after the last legitimate form, dated September 19, 2019.  Whether Ms. Sands committed a fraud against Mr. Baxley, pertaining to his life insurance with Midland Life Insurance Company, is not part of the pleadings at this time.  Because Ms. Sands's position is that she is the sole beneficiary on both policies, there is a strong implication that she made the disputed changes, but proof of fraud is not required in this case.

Sands Decl. ¶ 29, Ex. 8 (RFP Responses) at ECF p. 3 (RFP No. 6).  Thus, Norman expressly disavowed any claim of fraud by Sands.

Norman also does not argue that Baxley was incapacitated at the time of the February 2022 beneficiary designations.  He instead appears to contend that Sands unduly influenced Baxley with respect to designating her the sole primary beneficiary of both policies.

Notably, Norman did not produce evidence in discovery supporting an undue influence theory.  For example, in response to interrogatories asking him to "explain when (dates and times) you claim Debbie Sands unduly influenced Eric Baxley into naming her the beneficiary of his life insurance policies" and "[w]hat specific actions did Debbie Sands take to unduly influence Eric Baxley into naming her the beneficiary of his life insurance policies?" Norman responded, "[t]he beneficiary designations after September 19, 2019 are not Eric Baxley's intention, nor was it prepared by him, or sent to the life insurance company by him.  The various dates are in January and February 2022, when the purported many attempts at false changes occurred, if Eric Baxley had any involvement with those changes at all."  Sands Decl. ¶ 28, Ex. 7 at ECF pp. 8-9 (Interrogatory Nos. 7, 8).  Sands also propounded RFPs seeking "any documents that support [Norman's] claim Debbie Sands unduly influenced Eric Baxley to name her the beneficiary of his life insurance policies," and documents supporting the claim "Eric Baxley was susceptible to undue influence in January or February 2022."  Sands Decl. ¶ 29, Ex. 8 at ECF p. 3 (RFP Nos. 7,

7

1   8).  Norman responded, "Responsive documents will be produced.  These documents will be
2   available after the medical providers have completed discovery."  *Id*.  Sands represents that no
3   such documents were produced, and that in fact, Norman did not produce any documents in
4   discovery.  *See* Reply 5.
5     "'Undue influence' means excessive persuasion that causes another person to act or
6   refrain from acting by overcoming that person's free will and results in inequity."  Cal. Welf. &
7   Inst. Code § 15610.70(a); Cal. Prob. Code § 86 (adopting the meaning of "undue influence" from
8   Welfare and Institutions Code section 15610.70).  "In evaluating undue influence, courts shall
9   consider: (1) the vulnerability of the victim; (2) the influencer's apparent authority; (3) the actions
10  or tactics used by the influencer; and (4) the equity of the result."  *Primerica*, 2016 WL 9223793,
11  at *2 (citing Cal. Welf. & Inst. Code § 15610.70(a)(1)-(4)).  "Because perpetrators of undue
12  influence rarely leave any direct evidence of their actions, [parties asserting undue influence]
13  typically rely on circumstantial evidence and the reasonable inferences drawn from that evidence
14  to prove their case."  *Keading v. Keading*, 60 Cal. App. 5th 1115, 1125 (2021).  Norman bears the
15  burden of proof on the issue of undue influence.  *See Primerica*, 2016 WL 9223793, at *2 ("the
16  party asserting an undue influence claim . . . bears the burden of proof").
17    "The first factor, the victim's vulnerability, may be demonstrated by 'incapacity, illness,
18  disability, injury, age, education, impaired cognitive function, emotional distress, isolation, or
19  dependency, and whether the influencer knew or should have known of the alleged victim's
20  vulnerability.'"  *Keading*, 60 Cal. App. 5th at 1126 (quoting Cal. Welf. & Inst. Code §
21  15610.70(a)(1)).  In response to an interrogatory asking about the "specific medical conditions"
22  that Norman contends "made Eric Baxley vulnerable to Debbie Sands' persuasion," Norman
23  answered: "[Baxley] was hospitalized during January and February 2022 and died, in the hospital,
24  on March 6, 2022.  He was in a very weak, very compromised condition, during those times, and
25  in between hospitalizations, too."  Sands Decl. Ex. 7 at ECF 10 (Interrogatory No. 12).  [*See also*
26  Docket No. 79-1 (Guidry Decl. Aug. 21, 2024) ¶ 18 ("Eric was in and out of the hospital in
27  January and February 2022").]  While Norman does not submit any documentary evidence
28  regarding Baxley's illness, his illness is not in dispute.  Sands states in a declaration that Baxley

United States District Court
Northern District of California

"developed very serious liver problems as a result of his drinking" and that he was hospitalized in 2021. According to Sands, "it became apparent that his liver disease was so severe that he was likely going to die." Sands Decl. ¶¶ 5, 6. Therefore, as it is undisputed that Baxley was ill at the time of the February 2022 beneficiary designations, the foregoing evidence is sufficient to create a dispute of fact as to whether Baxley was "vulnerable" at the time. *See Keading*, 60 Cal. App. 5th at 1126 (finding "abundant evidence" that alleged victim of elder abuse was "vulnerable" while grieving his spouse's death and requiring "round-the-clock care" for his deteriorating health); *Newman v. Casey*, 99 Cal. App. 5th 359, 376 (2024) (affirming trial court's finding that 86-year-old victim of elder abuse was "vulnerable" where she "did not fully understand what she was told by" her daughter or her daughter's lawyer).

The second factor is the "influencer's apparent authority," which "may be demonstrated by the influencer's 'status as a fiduciary, family member, care provider, health care professional, legal professional, spiritual adviser, expert, or other qualification.'" *Keading*, 60 Cal. App. 5th at 1126 (quoting Cal. Welf. & Inst. Code § 15610.70(a)(2)). Sands states that she was engaged to Baxley at the time of his death, Sands Decl. ¶ 3, while Norman submits a declaration by Baxley's mother, Guidry, in which she contends that Baxley asked her in December 2021 "to let Debbie Sands know he doesn't want her around anymore," told Guidry that "he had not been seeing Ms. Sands," and told her in February 2022 that he "wanted Debbie Sands out of his life, and out of his home." Guidry Decl. ¶¶ 20, 22. The court concludes that this evidence is sufficient to create a dispute of fact as to whether Sands had authority with Baxley.

The third factor is "the actions or tactics used by the influencer." Cal. Welf. & Inst. Code § 15610.70(a)(3)). This factor "may be demonstrated by the influencer's '[i]nitiation of changes in personal or property rights, use of haste or secrecy in effecting those changes, [and] effecting those changes at inappropriate times and places.'" *Keading*, 60 Cal. App. 5th at 1126 (citing Cal. Welf. & Inst. Code § 15610.70(a)(3)(C)). It may also be demonstrated by an influencer's "[c]ontrolling necessaries of life, medication, the victim's interactions with others, access to information, or sleep" and "[u]se of affection, intimidation, or coercion." Cal. Welf. & Inst. Code § 15610.70(a)(3)(A), (B).

9

There is no dispute that there was a change in the beneficiaries of Baxley's insurance policies, but Norman offers no evidence regarding Sands's "actions or tactics" to influence Baxley. His opposition details many purported credibility issues and red flags regarding the February 2022 beneficiary designations. These include the use of online forms to submit changes to the policies, even though Norman contends that Baxley had always worked with his insurance agent to make changes; repeated "errors" in the online forms; the submission to Midland in January 2022 of a new address, phone number, and mailing address for Baxley that Guidry disputes are true and accurate; purported problems with Baxley's signature on documents during the relevant time period; and the description of a third party, Jason Meza, as a "cousin" of Baxley's on a beneficiary designation form even though he is not Baxley's cousin. *See* Opp'n 2-14; *see generally* Guidry Decl. Norman did not come forward with any evidence connecting Sands to these or other purportedly nefarious actions. For example, Norman argued at the hearing that Sands created a "fake" phone number, mailing address, and email address for Baxley and that Baxley was a victim of identity theft, arguing that it was not actually Baxley who made the February 2022 beneficiary designations. *See also* Opp'n 4 ("Starting with a webportal login, on January 16, 2022, which changed all the contact information for Mr. Baxley with Midland, the identity highjacking began."). When asked to identify evidence supporting this theory, he argued that Sands did not leave "her fingerprints on" identity theft and that the court should infer that she is responsible for the changes in beneficiary designations because she stands to benefit from them.

Notably, Norman claimed in his Rule 26(a)(1) initial disclosures that "[d]iscovery will include communications of Debbie Sands, including her cellphone records, internet records, and communications with other persons, including Midland, pertaining to the life insurance benefits involved here." [Docket No. 81-2 (Hoover Decl. Aug. 28, 2024) ¶ 2, Ex. 29 (Norman's initial disclosures) 4.] Such records could contain evidence supporting that Sands had access to Baxley's account with Midland and/or had contacts with a third party with access, but Norman apparently did not obtain the records and as noted, did not produce any documents in discovery. Norman also did not submit information corroborating the identity theft theory, such as records from a service provider showing that a phone number or IP address belonging to someone other than Baxley was

used to register the allegedly fake email address, or showing that the IP addresses used to submit the beneficiary designations were connected to devices belonging to someone other than Baxley.

Norman also does not present any evidence that Sands took any specific actions with respect to Baxley's beneficiary designations for the policies, such as initiating the changes in beneficiaries herself. *See*, *e.g., Keading*, 60 Cal. App. 5th at 1126 (finding substantial evidence of elder abuse where victim's son "rushed his father to a UPS store to execute a new power of attorney designating him attorney-in-fact" and then used the power of attorney to execute a grant deed transferring property out of a shared trust). The only record evidence arguably connecting Sands to the change in beneficiary designations is a Certification of Trust that Baxley and Sands signed on January 22, 2022. Sands Decl. ¶ 31, Ex. 10. Norman argues that the Certification of Trust "ties" Sands to wrongdoing because "[t]here is no trust involved with this policy" and "Mr. Baxley had no trust and the policies were not held by a trust." Opp'n 3. But Sands offers her own explanation regarding the document. According to Sands, Baxley "began trying to make changes to his policies in early 2022" and "was very frustrated because his beneficiary change requests kept getting rejected." Sands Decl. ¶¶ 9, 11. She states that "[a]t some point, Eric asked [her] to sign a form that Midland had sent him about a trust certification," and that she signed it and returned it to him. *Id*. at ¶ 13. She argues that "the reason [Baxley] tried attaching a trust form is because Midland sent him a blank trust certification form when it rejected his [previous] requests." Mot. 13. In support, she cites Robinson's declaration, in which he states, "[w]hen beneficiary change requests are rejected, Midland sends an explanation letter to the owner along with a blank beneficiary designation form. The blank beneficiary designation form sometimes includes a blank Certificate of Trust Agreement form." Robinson Decl. ¶ 9. Norman does not refute this evidence.

For her part, Sands states that she "did not have any interaction with Midland at any point prior to Eric's death" and "did not make any beneficiary designation requests on Eric's behalf." Sands Decl. ¶¶ 14, 15. She also submits evidence refuting several of Norman's points regarding "identity theft." For example, Norman contends that the email address ebaxley2739@gmail.com, which was used by Baxley to communicate with Midland in January 2022, "was not an email used by Baxley" and was not "used by Baxley at any other time that is known." Opp'n 11 (citing

11

Guidry Decl. ¶ 16). Sands submits emails from Baxley using that email address that date back to 2020. Sands Decl. ¶ 47, Ex. 26. Norman also contends that "Baxley never lived at 399 Mill Pond Drive," the address listed on a January 18, 2022 change of address request submitted to Midland. Opp'n 8 ("[e]verything including and after the address change is fake."). But Baxley's former neighbor, Santo Piraro, submits a declaration explaining the circumstances that led to Baxley staying at his house at 399 Mill Pond Drive and receiving mail there. [Docket No. 76-2 (Piraro Decl. Aug. 7, 2023) ¶¶ 5-9.] Norman does not respond to this evidence.

Essentially, Norman seeks to paint Sands as an untrustworthy person with a criminal history. Instead of conducting basic discovery to corroborate his theory of Sands' malfeasance, he asks the court to speculate that because Sands has a criminal history—one that is too old for the court to consider—she must have played a role in changing Baxley's insurance beneficiaries to benefit herself, or in unduly influencing Baxley to do so himself. Such an inference is entirely unsupported by evidence or authority. Norman has failed to come forward with evidence sufficient to create a triable dispute regarding Sands's "actions or tactics" relevant to "determining whether [the change in beneficiary designations] was produced by undue influence." *See* Cal. Welf. & Inst. Code § 15610.70(a).

The fourth factor is "[t]he equity of the result." Cal. Welf. & Inst. Code § 15610.70(a)(4)). This factor "may be demonstrated by 'the economic consequences to the victim, any divergence from the victim's prior intent or course of conduct or dealing, the relationship of the value conveyed to the value of any services or consideration received, or the appropriateness of the change in light of the length and nature of the relationship.'" *Keading*, 60 Cal. App. 5th at 1126-27 (quoting Cal. Welf. & Inst. Code § 15610.70(a)(4)). Norman offers no argument or evidence about the consequences to Baxley, the purported victim of Sands's alleged undue influence. He argues only that "Mrs. Sands must *not* be paid these benefits." Opp'n 2 (emphasis in original). This is insufficient to create a genuine issue of fact as to this factor.

In sum, Norman has failed to create a triable dispute of fact regarding undue influence by Sands with respect to the beneficiary designations for the two policies. Accordingly, he cannot satisfy his burden to prove that the beneficiary designations should be invalidated. Sands's motion

12

for summary judgment is therefore granted. *See, e.g., Primerica*, 2016 WL 9223793, at *2-3 (granting summary judgment in favor of designated beneficiary where competing claimant "presented no evidence of any undue pressure, persuasion, or coercive acts"). As this ruling disposes of the entire case, Sands's motion to strike Norman's jury demand (Docket No. 77) is denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, Sands's motion for summary judgment is granted. The Clerk of the Court shall pay the life insurance benefits on deposit with the court, plus accrued interest, to Sands. The Clerk shall enter judgment in Sands's favor.

**IT IS SO ORDERED.**

Dated: October 28, 2024



Donna M. Ryu
Chief Magistrate Judge

13